CITY OF KNOXVILLE *v.* MARTIN C. HUNT.*

(*Knoxville.* September Term, 1927.)

Opinion filed November 21, 1927.

1. HIGHWAYS. DEDICATION. ACCEPTANCE.

Where the subdivision within a municipality is laid out, the streets being clearly defined by the plat, and the municipality constructs a sewer on one of said streets without condemnation, it is presumed that the city has accepted the whole of said street as a public highway. (Post, p. 10.)

Citing: Doyle v. Chattanooga, 128 Tenn. (1 Thomp.), 433.

2. HIGHWAYS. MUNICIPALITY. ACCEPTANCE. DAMAGE.

Where it appears that a municipality has accepted, although it had not improved the street, the municipality is answerable to an adjoining property owner for damages to his property, consequent upon the grading of the street, even though the grading was done by a third person, and permission to grade was not formal or regular. (Post, p. 11.)

Citing: Knoxville v. Harth, 105 Tenn. (21 Pick.), 436.

3. HIGHWAYS. DAMAGES. MUNICIPALITY.

The changing of the grade of a street so as to cut off the ingress and egress of an adjoining property owner from a street so as to require him to enter through an alley, and then only with some grading in the rear of his lot, is such damage to his premises as should be compensated. (Post, p. 11.)

Citing: Hamilton v. Rape, 101 Tenn. (17 Pick.), 222; Railroad v. Moriarity, 135 Tenn. (8 Thomp.) 446.

4. HIGHWAYS. INGRESS AND EGRESS. CHANGE OF GRADE.

Under the language of our statute it is immaterial whether the change be made from the natural grade or an established grade

---

*As to what constitutes dedication and acceptance of highway, see annotation in 20 L. R. A. (N. S.), 558; 8 R. C. L., 899, 900; 2 R. C. L. Supp., 680.

On measure of damages to abutting owner for changing grade of street, see 13 R. C. L., 109; 6 R. C. L. Supp., 750.

of an adjacent highway. If there is a highway and the abutting property owner has ingress and egress over such highway, he is entitled to recover when such right of ingress or egress is lost or damaged by change of grade made in the highway. (Post, p. 12.)

Citing Thompson-Shannon's Code, sec. 1918.

5. HIGHWAYS. MUNICIPALITY. STATUTORY PROVISIONS.

Earlier statutes which provided that the owner of abutting property on an unimproved street, before building, might give notice to the municipality and have the grade of the street established, have been repealed by subsequent acts of the Legislature. (Post, p. 13.)

Citing: Chapter 31, Acts of 1891; Section 1988, Thompson's-Shannon's Code; Chattanooga v. Neely, 97 Tenn. (13 Pick.), 527.

6. MUNICIPALITY. CHANGE OF GRADE. DAMAGES. APPEAL. REMITTITUR.

Where from all the facts it is shown that the damages related to an adjacent property owner for changing the grade of a street, and it further appears that the property owner will have to do some grading on his lot in order to gain access thereto, and where there is no concurrence of the lower courts, this court may say to what extent the verdict was sustained by the evidence, and to require a remittitur. (Post, p. 13.)

7. MUNICIPAL CORPORATIONS. SUBDIVISION. DAMAGE.

In a suit by a property owner to recover damages for changing the grade of a street in a subdivision only the city and not the developers of the subdivision is liable for damages. (Post, p. 13.)

---

*Headnotes 1. Dedication, 18 C. J., section 80; 2. Dedication, 18 C. J., section 90; 3. Dedication, 18 C. J., section 82; 4. Municipal Corporations, 28 Cyc., p. 1068; 5. Municipal Corporations, 28 Cyc., p. 1070; 6. Municipal Corporations, 28 Cyc., p. 1081; 7. Appeal and Error, 4 C. J., section 3071.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County.—HON. A. C. GRIMM, Judge.

FRANK MONTGOMERY, for plaintiff in error.

KENNERLY & KEY and LEN G. BROUGHTON, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Hunt to recover damages alleged to have been sustained on account of the change of grade in a street running by his premises in the City of Knoxville. The suit was based on Section 1988, Thompson's-Shannon's Code, and the trustees of the White estate as well as the City of Knoxville were sued.

The case was submitted to the jury in the Circuit Court and there was a verdict in favor of the trustees of the White estate but against the City of Knoxville for $3,000. Judgment was entered according to the verdict. The Court of Appeals affirmed the judgment as to the trustees of the White estate but reversed the judgment as to the City of Knoxville and dismissed the suit. A petition for *certiorari* has been filed by Hunt which we have granted as to the City of Knoxville.

The property owned by Hunt was part of a subdivision in Knoxville known as the White Park addition. This addition was laid out in lots and streets and offered for sale to the public some years ago. Hunt's lot fronted North on Cumberland Avenue. His deed called for a street on his Western boundary fifty feet wide. This street was referred to as Thirteenth Street formerly, but is now known as Twenty-second Street.

At the time Hunt purchased his lot the City had paved Cumberland Avenue on his front and left an opening fifty feet wide in the sidewalk for the entry of Twenty-second Street into Cumberland Avenue from the South. A plat of the White-Park subdivision showing Twenty-second Street was filed with the City and later recorded

in the office of the Register of Knox County under instructions of the Director of Public Service of the City of Knoxville. The City laid a sewer through a portion of this street. The sewer ran West through an alley in the rear of Hunt's place and at the intersection of the alley with Twenty-second Street turned South through that street.

About three years after Hunt built and occupied a house upon his lot, the Trustees of the White estate consulted with the City authorities as to improving and grading Twenty-second Street, for the benefit of the lots in the subdivision in the rear of Hunt's place. The Trustees of the estate were advised as to the particular grade for the street by the Director of Public Service and were required to file a map of the subdivision in the office of the Register of Knox County, as heretofore stated. The Trustees thereupon graded Twenty-second Street, at least without interference from the City, and in so doing opened a cut alongside Hunt's premises about two feet deep at the front, and the graded street going down to a depth of more than six feet at the back of Hunt's lot.

(1) Under authorities approved in *Doyle* v. *Chattanooga,* 128 Tenn., 433, no matter what the particular act of a municipality is, if it be an act which could only be rightfully done on a highway, it should be regarded as an acceptance of that highway. The proof here indicates that the sewer mentioned was laid in Twenty-second Street without condemnation or any effort to secure a right of way. And it is to be deduced from *Doyle* v. *Chattanooga, supra,* that if the limits of the street dedicated are clearly defined by a registered map, an act of acceptance of part thereof is presumed to be an acceptance of the whole. Upon all the facts appearing, we

think there was a plain acceptance of Twenty-second Street by the City of Knoxville.

(2)  The City having accepted, although it had not improved this street, would seem to be answerable to Hunt for damages to his property consequent upon grading the street under *Knoxville v. Harth,* 105 Tenn., 436. It was held in that case that a municipal corporation, permitting a third person to grade its streets, is liable for resulting damages to the ingress and egress of the owners of abutting lots. The street graded in that case was unimproved and permission to grade was not formal nor regular, but principles of estoppel were applied.

In the case before us the City seeks to escape the force of the decisions referred to by the contention that Twenty-second Street was not a real street; that there was no general or public user thereof.

Certainly Twenty-second Street had been laid out and defined and accepted by the City. It seems that before it was graded this street could not be used by vehicles all the way from Cumberland Avenue to the next street on the South because of a sharp declivity in the rear of Hunt's lot. The proof, however, is equally clear that Hunt used the street for access to the rear of his premises before any grading was done. He hauled his coal and did other hauling in and out that way. There may have been some other user of the street.

(3)  Hunt, however, is suing for damages to his own right of ingress and egress. It is for this mainly that he can recover, if at all, by reason of the change of grade. The proof indicates that he cannot get into his premises at all from Twenty-second Street since it was lowered. The alley in the rear of his lot was lowered to correspond with the new grade of Twenty-second Street, and he cannot get into the alley without some grading in the rear of his lot. It is manifest, therefore, that Hunt's right of

ingress and egress to his premises has been damaged. See *Hamilton* v. *Rape,* 101 Tenn., 222; *Railroad Co.* v. *Moriarity,* 135 Tenn., 446.

(4) Section 1918, Thompson's-Shannon's Code, provides that the owner of real estate shall recover damage to his property "by reason of any change made in the natural or established grade of any highway or townway in the City," to be paid by such cities, towns, etc. Under the language of this Statute, it is immaterial whether the change be made from the natural grade or an established grade of an adjacent highway. If there is a highway and the abutting owner has ingress and egress over such highway, he is entitled to recover when such right of ingress or egress is lost or damaged by change of grade made in the highway.

We are aware of a line of authorities which, while conceding the right of an abutting owner to recover for a change from an established grade to a different grade, deny him a right to recover for a change from the natural grade to the first established grade of a highway. These cases are cited and discussed in McQuillin on Municipal Corporations, Section 1969; 13 R. C. L., pp. 102, 103, 104, and seemed to have been followed by the Court of Appeals. The reasoning of such cases is that one who buys property on an unimproved street understands and consents in advance, as an element entering into his purchase, that the municipality will later on have to determine and establish a grade for that street. All these decisions, however, were based on a bare constitutional provision that property should not be damaged by a public authority without due compensation, etc. None of the Courts had before them a statutory provision such as Section 1918, Thompson's-Shannon's Code, expressly providing for damages on account of a change made either in the natural or established grade of a highway.

(5) Earlier statutory provisions contemplated that the owner of property abutting on an unimproved street, before building, might give notice to the municipality and have the grade of the street established. That ordinarily, he could only recover for damages sustained by reason of the change of an established grade; and could only recover for the change of the natural grade when the municipality neglected his application to establish a grade. These Statutes, however, were repealed by implication by Chapter 31 of the Acts of 1891, carried into Thompson's-Shannon's Code at Section 1988. *Chattanooga* v. *Neely,* 97 Tenn., 527.

(6) In the Court below Hunt recovered a judgment of $3,000 against the City. We think this is too much. It will be necessary for him to build a retaining wall by his lot along Twenty-second Street and along a portion of the alley. He will also have to do some grading on his lot to get access to the alley. It seems to us that the cost of these improvements will largely cover his damages. Taking all things into consideration, we think $1500 would be a liberal recovery for him. The question of the amount of damages is fairly before us. There is no concurrence of the lower Courts. We are free to say, in consideration of the propriety of the motion for a directed verdict, to what extent the verdict was sustained by the evidence. (7) If a *remittitur* of $1500 is entered, the judgment of the Court of Appeals will be reversed as to the City of Knoxville, and the judgment of the Court below will be affirmed for $1500.

The judgment of the Court of Appeals dismissing the suit as to the White estate will be affirmed. Tax all costs to the City of Knoxville.