WOOD *v.* FOSTER & CREIGHTON CO. *et al.*

(*Knoxville*, September Term, 1950.)

Opinion filed December 9, 1950.

H. L. BARGER and J. WALTER JOHNSON, both of Chattanooga, for C. E. Wood, plaintiff in error.

ELLIS K. MEACHAM, of Chattanooga, for City of Chattanooga.

MILLER, MARTIN, HITCHING & TIPTON, of Chattanooga, for Foster & Creighton Co., defendants in error.

Mr. Justice Burnett delivered the opinion of the Court.

The property owner, Wood, and contractor, Foster & Creighton Co., have heretofore applied to this Court for writs of certiorari which have been granted. The parties have briefed and argued the case before this Court.

The property owner, Wood, sued Foster & Creighton Co., and the City of Chattanooga to recover damages for the unlawful cutting and removing from Wood's property certain shade trees and the taking of soil from his property. Judgment was rendered against the contractor and in favor of the City. On appeal the Court of Appeals affirmed this judgment.

On July 15, 1946, the State of Tennessee made a contract with the City of Chattanooga for the widening of Rossville Boulevard, as authorized by Code Section 3242 et seq. by which the City obligated itself, among other things, to procure easements for right of way as shown by blue prints accompanying the proposal. The blue prints were drawn by the City engineer due to the fact that the State engineering office was short of manpower at the time.

The State of Tennessee contracted with the defendant, Foster & Creighton, to perform the work in widening Rossville Boulevard.

The plaintiff's property abutted on Rossville Boulevard and was some three or four feet higher than the

street after it was paved making it necessary to either build a retaining wall in front of the plaintiff's property or slope the property back so that the dirt etc. from the plaintiff's property would not wash off on the sidewalk. The plans made no particular reference to this property, did not designate either method, that is, the building of the retaining wall or the sloping of the property back, and no easement was acquired within the plaintiff's front line beyond the uniform width of the street. About six feet inside his property line were several shade trees which he had placed there some twenty-five years before.

The State engineer went on the lots and placed stakes indicating the removal of the trees and the removal and sloping of the bank. The contractor followed the instructions of the State engineer but made no inquiry of the City engineer and did not refer to the plans and specifications. The contractor merely followed the directions of the State engineer under whom he was working.

The building of a retaining wall would have been somewhat more expensive than the sloping of the bank.

The State engineer testified that he acted under both a general provision to be found in all contractors' general specifications and under a general provision attached to the plans and specifications for this project to the effect that where a retaining wall is not indicated expressly, the earth shall be cut and sloped. The general specifications of contractors were not introduced in evidence.

The City engineer, testifying for the City, differed with the State engineer as to the interpretation of the actual contract and testified that it contained no authority for sloping; that they always expressly show when a tree is

to be removed or a bank sloped, or a wall to be built, but that nothing was shown on these plans.

The contractor, Foster & Creighton Co., was doing the work under contract with the State, and the City was not a party to this contract. This contractor did what the State's representative in charge of the project ordered it to do. The contractor was clearly entitled to rely on such orders without being required to make an independent check, at its peril, on the State's authority to give the order. The contractor was guilty of no negligence in the manner in which it did this work, and the damage done to the plaintiff resulted from the work being done rather than from the contractor's negligence in doing it. There is no claim in the record that the work was done negligently. The only claim of negligence, insofar as the contractor is concerned, is that the contractor was negligent in not specifically examining the plans to find whether or not the plans showed that the property was to be sloped back. This is the basis of the two lower courts holding that the contractor was negligent.

It seems to us that as a practical matter, in the construction of public improvement, that the contractor should be relieved from checking every order given it by the public authority. The State for whom the contractor works does the engineering, stakes out the project, tells the contractor what to grade and what to do and so long as the contractor complies with these instructions by its superior then the contractor is fulfilling its obligation. If the contractor was required, at its peril, to check and double check all plans given it and required to keep an engineering force for the purpose of interpreting these plans, and was not permitted to follow the

orders of the engineering force of its superior, then the costs of public improvement would be so increased as to make them almost prohibitive. The purpose of having the State engineering department for these public improvements is to lay out these projects and to tell the contractor where to do its work. The contractor's work is not the engineering job of laying out the project but is merely in doing what it is instructed to do. So long as it does this work as it is instructed to do by its superior in a workmanlike manner, not negligently, then the contractor is not liable.

The contractor had no discretion as to whether it would build a retaining wall or slope the bank. That was a matter for the State engineering department to determine and the State having made the determination to slope the bank, the contractor had no alternative but to follow the State's orders.

It is a well settled rule in this State that a contractor constructing a public improvement for a public authority is not liable to a private property owner for the resulting damage where the contractor acts in accordance with the public authority's orders and is not itself guilty of negligence in the manner in which it does the work. 43 Am. Jur., 827-8, Public Words & Contracts, Sec. 83; *Iron Mountain Railroad Co.* v. *Bingham,* 87 Tenn. 522, 531, 11 S. W. 705, 4 L. R. A. 622; *Chattanooga T. R. Power Co.* v. *Lawson,* 139 Tenn. 354, 369-370, 201 S. W. 165; *Lebanon* v. *Dillard,* 155 Tenn. 448, 295 S. W. 60; *Newberry* v. *Hamblen County,* 157 Tenn. 491, 495, 9 S. W. (2d) 700, 701 and *Trigg* v. *H. K. Ferguson Co.,* 30 Tenn. App. 672, 209 S. W. (2d) 525, 529 (certiorari denied).

In *Newberry* v. *Hamblen Co.,* supra, it was said: "If the injury is a necessary incident of necessary blasting in

construction of the highway, the damages are chargeable to the condemnor, here the county. But if the injury is not such a necessary incident, but is the result of negligence of the contractor, then the damages are chargeable to him.''

The sloping of the bank, consequently the removal of the trees, or the building of the retaining wall was a necessary incident to the widening and improving of Rossville Boulevard. The decision as to whether or not a retaining wall should be built or the bank sloped was up to the engineering department of the State. Since the City obligated itself to acquire the rights of way for this improvement and did not specifically designate that a retaining wall would be built, it seems to us that it was perfectly logical and natural for the State engineering department to direct and stake out a sloping of this bank which was more economical on the part of either the State or the City. It is a logical and natural deduction that the costs of building this retaining wall or paying for the slope would fall on the City as this taking was a necessary incident and part of the City's obligation in securing the rights of way for the improvement of this property.

 The contractor thus not being guilty of negligence and having merely followed the directions of its superior, the State, in doing this work is clearly not liable herein. The result is that the judgment against the contractor will be reversed and the suit as to the contractor dismissed.

The suit against the City is predicated on Code Section 3404, which provides in substance that if the municipality shall do anything to change the natural or established grade of the highway etc., and thereby injure the

property owner, that the owner "shall be paid all damages therefor by such municipality, which damages may be recovered by suit brought at any time in one year from the completion of or the cessation of such works, acts, or improvements; . . . ."

It seems to us that the City having authorized this improvement and having accepted it would be answerable to Wood for the damages to his property which were necessarily occasioned by the improvement done. In *City of Knoxville* v. *Harth,* 105 Tenn. 436, 58 S. W. 650, it was held that a municipality, permitting a third person to grade its streets, was liable for resulting damages to the ingress and egress to the owners of abutting lots. The damage done in this case is more of a taking than the destruction of the ingress and egress to one's property. This was an actual taking necessarily incident to the improvement even though the street lines did not run over on the property but in order to properly pave the street it was necessary to enter the plaintiff's property and slope it back so as to prevent the sidewalk from becoming a mud walk.

The property of the plaintiff was taken here without condemnation or any effort to secure the property as taken. It seems to us that those cases which hold that the taking of one's property, without actually taking any property at all, but by the change in the grade of the street the access to the property is injured then the municipality is liable for this injury, are applicable here. *City of Knoxville* v. *Hunt,* 156 Tenn. 7, 299 S. W. 789; *Coyne* v. *Memphis,* 118 Tenn. 651, 102 S. W. 355. This was unquestionably a taking of the plaintiff's property which under the constitution cannot be done without compensation. The property owner has no right against

the contractor who did the work in a workmanlike manner and without doing it negligently. The property owner had no right against the State because it was the City who was building the street in cooperation with the State and the Federal government. The obligation to secure these rights of way and the resulting damage to the property for property taken or for ingress and egress to the property by reason of this improvement was an obligation of the City. Therefore we think that clearly under Code Section 3404, above referred to, the City is obligated to the property owner for the resulting damage.

It results that the judgment of the Court of Appeals in favor of the City will be reversed and a judgment rendered here in favor of the property owner against the City of Chattanooga for $500, the amount of the damages fixed by the lower courts to the plaintiff's property.

All concur.