DAVID M. PACK, Commissioner of Highways and Public Works of the State of Tennessee, Appellant v. FRANK BELCHER and wife, VIOLET BELCHER, Appellees. —458 S.W.2d 18.

Middle Section. October 31, 1969.

Certiorari Denied by Supreme Court April 6, 1970.

24

George F. McCanless, Attorney General, Lurton Goodpasture, Assistant Attorney General, Nashville, R. E. Bonner, Jr., Special Counsel, McMinnville, for appellant.

John M. McCord, Henry McCord, Forrester & Richardson, Tullahoma, for appellees.

## THE CASE

SHRIVER, P.J.(M.S.) The short statement of the case filed by counsel for the appellant is in part as follows:

"This is a Department of Highways condemnation case which was tried in the Circuit Court for Warren County, Tennessee to a jury on June 20, 1968. The jury returned a verdict of Thirteen Thousand Five Hundred ($13,500.00) Dollars in favor of the landowners.

The two general points raised by this appeal are.

(1) Landowners abutting a public highway have a right of ingress and egress to the public highway where the condemning authority does not designate the highway as a limited or controlled access highway at the time of the acquisition of the right-of-way.

(2) The verdict of the jury was excessive."

Suit was instituted on August 31, 1965 by the Commissioner of Highways to condemn for right-of-way purposes two parcels of land belonging to Frank Belcher and wife comprising approximately 6.77 acres of farm land in the Tenth Civil District of Warren County, Tennessee. An order of taking was entered and $4,100.00 was deposited in court. On May 8, 1968 the Commissioner amended the description of the land taken so as to designate the taking in three parcels. Parcel No. 1 was sought to be condemned "as public highway right-of-way" and Parcels Two and Three were condemned "in fee simple, with all rights of ingress and egress to, from and across the same and to and from abutting lands for the purpose of the construction of a controlled access highway."

The case was tried before the Circuit Judge, and a jury on June 20, 1968 and resulted in a verdict for $3,500.00 as the value of the land taken and $10,000.00 as incidental damages to the remaining land, and judgment was entered on said verdict June 28, 1968.

Motion for a new trial was made and overruled and an appeal duly perfected to this Court by the Commissioner.

## ASSIGNMENTS OF ERROR

There are seven assignments of error which it will not be necessary to set out seriatim. The assignments are consolidated into two propositions by counsel for the State, the first five assignments being considered together as dealing with the proposition that the landowners did not lose their right of ingress and egress to that portion of the land taken for highway purposes and designated as Parcel No. 1, and that the Court erred in treating the

matter in his rulings and in his charge to the jury as though ingress and egress to the highway adjacent to Parcel No. 1 was lost to the landowners in the same way as it was in the condemnation of Parcels Nos. 2 and 3 which were taken in fee simple and for a controlled access highway.

The last two assignments were to the effect that the verdict is excessive.

Assignment No. 1 asserts error in allowing witnesses for the landowners to testify that access along Parcel No. 1 was limited by the taking and in basing their estimate of damages on that proposition.

Assignments Nos. 2, 3 and 4 assign error in the charge to the jury, quoting excerpts from the charge.

Assignment No. 5 charges error in refusing a special request made by counsel for the State.

## OUR CONCLUSIONS

In our view of the case it will not be necessary to discuss the facts shown by the record other than as they pertain to the statements of counsel for the landowners made in the presence of the jury and the ruling of the Court thereon and portions of the charge to the jury.

It seems clear that counsel for the landowners and the Trial Judge proceeded in this case as though the taking of Parcel No. 1 for general highway purposes was in no wise to be distinguished from the taking in fee simple of Parcels Nos. 2 and 3 for controlled access highway purposes insofar as the taking in each instance related to incidental damages to be awarded the landowners, especially for loss of the right of ingress and egress to and from the highway.

For example, on the direct examination of Mr. Freeman Brook, an Engineer with the Tennessee Highway Department, he was asked to describe the taking to the Court and jury, and after describing what certain lines on the plat meant, Mr. McCord, representing the landowners stated: "We object to future plans, Your Honor," whereupon, the Court stated: "They're buying it, they can do whatever they want to with it." At another point during the examination of a witness and in the course of a colloquy between counsel and the Court, the Court in the presence of the jury stated:

"I'm going to tell the jury, you might as well get it straight now, I'm going to tell the Jury that the landowner has no rights of ingress and egress across this new stretch of land and they won't have when it's completed, and I'm going to tell the jury that in my instruction. That the landowner has no rights of ingress, he cannot go from that road to that strip of land over there on either side, the North tract or the middle tract, he has no rights of ingress and egress because they've been taken."

The foregoing statement of the Court when taken in context seems to indicate that the Court had in mind rights of ingress and egress to Tract No. 1 as well as Tracts 2 and 3. Certainly it was not explained to the jury that his reference was to the non-access portion of the highway if, in fact, that is what the Court had in mind.

We are impressed that throughout the trial of this case Mr. McCord, representing the landowners, and the Court, interpreted Section 54-540 T.C.A., which is entitled "Entrances to Highways—Regulations," (part of

Chapter 38, Acts of 1955) as so restricting the owner's right of ingress and egress to a highway as that the owner would be entitled to damages for the taking of such rights in the same measure and to the same extent as if the taking were under Chapter 20, T.C.A., entitled "Controlled Access Facilities", and particularly Section 54-2004, which authorizes the taking of private property for controlled access facilities and service roads and which provides "all property rights acquired under the provisions of this chapter shall be in fee simple."

In his argument to the jury, Mr. McCord stated that the reason Mr. Frank Belcher cannot get across from that property is, "he could appeal to whoever might happen to be the Commissioner of Highways and ask for access and if the Commissioner says 'No, I don't want to,' that is the end of it because on September 11, 1965 that right was taken from Mr. and Mrs. Belcher."

In reading the Court's charge to the jury, one is compelled to conclude that the Court either purposely or inadvertently left the definite impression that no distinction was to be made in awarding incidental damages as applied to Tract No. 1, where the taking was for general highway purposes, and as to Tracts Nos. 2 and 3 where the taking was for controlled access purposes. Among other things, the Trial Judge stated to the jury that he wanted to read just a portion of the petition that the State had filed, stating:

"Just a part of one paragraph here that I do want to read to you, that they acquired this land for the purpose of constructing a road and all rights of ingress or egress to, from and across, to and from abutting lands are to be conveyed. So under the law of the State

of Tennessee, the Highway Department of the State is vested by law with the right and authority to control the entrance to and from the abutting landowner into any highway that is a part of the State system * * * it is the right of the landowner or that the landowner is giving up to the State which gives rise to the measure of damages that he and she are entitled to rather than the use to which the Commissioner of Highways for the State may make of those rights now or someday in the future. * * * Any entrance to and from the abutting land in the future is now contingent upon and subject to the consent and rights of the Commissioner of Highways for the State of Tennessee whose decision in the matter is final and from which there is no appeal on the part of the landowner.''

In his Brief and Argument in support of assignments of error counsel for the appellant makes the following statement:

''The Commissioner respectfully submits that the issues presented by this category of the Assignments of Error are four-square with the questions raised by the Commissioner in the consolidated cases of Pack v. Edwards et al and Pack vs. White et al in the same Department of Highways' Project (F-062-1-10) tried in the same court. The Commissioner's special request for charge number 1 in the Edwards-White cases and in the case at bar are identical except for the names of the parties defendant.''

The same special request was submitted in the case at bar and was denied.

It is indeed noteworthy that in the consolidated cases of Pack, Commissioner v. Edwards and Pack, Commis-

sioner v. White, in a Per Curiam opinion of this Court filed July 26, 1968 (no petition for certiorari filed), the same questions with respect to access by the owners were raised and the cause involved the same Highway Project and was tried before the same Trial Judge. In that opinion and the resulting decree we reversed and remanded the cause for a new trial. In said opinion we pointed out that under the plans and specifications for the project duly filed, it was shown that Parcel No. 1, which was at a point closest to the intersection of existing Highway No. 55 and the proposed No. 55 By-Pass, *was to be used for the construction of a controlled access highway and was to be acquired in fee simple,* together with all rights of ingress and egress to and from the limited access highway, Parcel No. 2 was to be acquired as a right-of-way for a public highway and abutted remaining lands of the defendant a distance of approximately 1311 feet on the North and 1703 feet on the South. As is stated in the opinion in that case. "It is shown that neither Parcel No. 2 in this suit nor the 4.14 acres described in the petition in Cause 3290, was designated as a limited access acquisition * * *"

It was noted in the opinion that a Department of Highways Engineer testifying with respect to the official plans of the Highway Department pointed out the controlled access portion of the taking as distinguished from that wherein the land was taken for general highway purposes. The opinion states:

"It resulted that the cases were submitted to the jury on the theory that the landowners had no vested rights of ingress and egress to and from the remaining land abutting the 2,200 feet of highway on either side, notwithstanding the fact that the 4.14 acres in Cause

No. 3290, Pack v. Edwards, et al, and Parcel No. 2 of Cause No. 3291, Pack vs. White, et al, were acquired as a public highway right-of-way and not in fee as a limited or controlled access right-of-way."

After discussing certain assignments of error having to do with the right of the Trial Court to consolidate the two cases for trial, the opinion states:

"For a more compelling reason we are of opinion that the Trial Judge erred in his charge to the jury with respect to access and in refusing to charge petitioner's Special Request No. 1, or in making clear to the jury the proposition set forth in Request No. 1 which is correct.

Landowners abutting a public highway have a right of ingress and egress to the highway where the condemning authority does not designate the highway as a limited or controlled access highway at the time of acquisition. T.C.A. 54-540, 54-2003 and 54-2004."

The opinion quotes at some length from Current, et al. v. Stevenson, et al., 173 Tenn. 250, 116 S.W.2d 1026, which states the general rule with respect to the right of access of an abutting owner as set forth in 29 C.J. 547.

The opinion then quotes from Pack, Commissioner v. Cooper, an opinion of this Court written by Judge W. P. Puryear and filed December 30, 1966, as follows:

"The denial of access to and from private property abutting on public thoroughfares is a relatively new practice in highway construction in this state. The state and its political subdivision should not be allowed to deprive abutting property owners of this long established right unless a clear intention to extinguish that

right is made to appear at the time such private property is taken for use as a public thoroughfare. Of course, such right may thereafter be taken by the condemning authority upon payment of just compensation therefor.''

■ Counsel for the landowners in the case at bar argues that this case is distinguishable from Pack, Commissioner v. Cooper and Pack, Commissioner v. Edwards et al, hereinabove referred to and quoted from, and asserts that the Trial Judge in the case at bar made it abundantly clear that the portions of the charge dealing with loss of access pertained to and were related to Parcers 2 and 3 only.

■ We disagree, both as to the applicability of the Cooper and Edwards cases and as to whether the Trial Judge distinguished between the order of taking in relation to Parcel 1 as opposed Parcels 2 and 3.

It is urged by counsel for the landowners and seems to have been the position of the Trial Judge, that after the enactment of Chapter 38, Public Acts of 1935. (54-540, 54-541, TC.A.), rights-of-way acquired for highway purposes impaired the abutting property owners' rights of ingress and egress and that such impairment, ipso facto, entitle the owner to damages. However, counsel overlooks the fact that such impairment, if any, may or may not be an incident to the taking in a given case, and that such impairment if any, is not equivalent to the elimination of such rights of ingress and egress, as in the case of taking for a controlled access right-of-way where the purposes set forth in the declaration of taking and construction plans involve a complete obstruction or taking of the landowner's right of access.

It should be pointed out that in Pack, Commissioner v. Cooper, *supra,* the Court was dealing with an assignment that asserted error on the part of the Trial Court in permitting the landowner and her witnesses to assess damages, and in explaining the incidence of such damages to the jury as though the land were taken for controlled access rather than uncontrolled, as set out in the petition, and as though the landowner's right of ingress and egress were denied.

It was in response to this assignment that the Court stated that the State and its political subdivision should not be allowed to deprive abutting property owners of the right of ingress and egress unless a clear intention to extinguish that right is made to appear at the time such property is taken for use as a public thoroughfare, and that, "of course, such right may, thereafter, be taken by the condemning authority upon payment of just compensation therefor."

If it be conceded that the taking of property by the State for highway purposes after the enactment of Chapter 38, Public Acts of 1955, might impair the landowner's right of access, it should be made clear that his right of access may or may not be changed from that already existing and that the question depends upon the order of taking and the plans of the Highway Department made and filed, or it may depend on some future action of the Highway officials.

Chapter 38, Public Acts of 1955, states that it was enacted to prevent the obstruction or restriction of the flow of water along, across or under a highway, and the impounding of water upon or within any such highway, "or the interference with or creation of any damage or haz-

ard to public travel," and that the Commissioner of Highways is authorized and directed to make reasonable and proper rules and regulations governing the construction of entrances into State highways.

If this Act impaired the right of access to highways so as to give rise to claims for damages by abutting property owners without any overt act on the part of the Commissioner of Highways, or suits to acquire rights-of-way, as seems to be the theory urged by counsel for the owners in the case at bar, it would seem that every abutting property owner in the State acquired a right of action against the State by reverse condemnation proceedings to recover damages as soon as the Act went into effect.

State ex rel. Moulton v. Williams, 207 Tenn. 695, 343 S.W.2d 857, is cited as authority by counsel for the owners in the case at bar. The quotation in the Reply Brief from the Moulton case to the effect that the right of the Commissioner of Highways to lay out these projects and fence them in and provide access ways is purely discretionary with him, has reference to controlled access highways and does not in any respect refer to property taken by the State for general highway purposes.

In Shelby County v. Dodson, et al., 13 Tenn.App. 392, it was said that the right of ingress and egress may be valuable or not, and may be of more or less value according to the property; that in the country when a grade is changed through a man's farm, the right of ingress and egress might, at any particular point, be of little or no value, and that the abutting owner would, thus, be entitled to little or no damages, whereas, in other situations

such right might be of considerable value, and that "the destruction or impairment of such a right is a proper matter for compensation to the extent of the value of the right thus taken away."

Insofar as we are able to determine from this record, the order of taking and the plans of the Highway Department do not contemplate any substantial interference with the landowner's present right of access to the highway along the borders of Parcel No. 1, and yet no distinction was made during the trial or in the charge of the Court so as to enable the jury to make a proper distinction between the taking as between Parcel No. 1 where an easement for general highway purposes was acquired, and the other two parcels that were acquired in fee simple with access cut off.

For the reasons indicated, the judgment must be reversed and the case remanded for a new trial.

Having disposed of the case on the grounds hereinabove set forth, it is unnecessary to discuss the question raised by the last two assignments of error wherein the verdict and judgment is attacked as being excessive.

The costs below will abide the judgment of the Trial Court. The costs of this appeal will be taxed to the appellees and the surety on their bond.

Reversed and remanded.

Puryear and Todd, JJ., concur.